<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DERWIN JERMAINE SMITH-BISHOP,<br><br>Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.; and THE CITY OF NEW YORK,<br><br>Defendants. | Case No. 2:24-cv-00408 (BRM) (AME)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Defendant The City of New York's ("the City") Motion to Dismiss Plaintiff Derwin Jermaine Smith-Bishop's ("Smith-Bishop") Amended Complaint (ECF No. 23), pursuant to Federal Rule of Civil Procedure 12(b)(2) or, in the alternative, Federal Rule of Civil Procedure 12(b)(6) (ECF No. 39). Also before this Court is Defendant Experian Information Solutions, Inc.'s ("EIS") Motion to Compel Arbitration, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*. ("FAA"). (ECF No. 48.) Smith-Bishop filed Oppositions to both Motions. (ECF Nos. 40, 49.) Both the City and EIS (collectively, "Defendants") filed Replies to the Opposition to their respective Motions. (ECF Nos. 41, 50.) Having reviewed the submissions filed in connection with the Motions and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, the City's Motion to Dismiss Smith-Bishop's Amended Complaint (ECF No. 23) is **GRANTED**, and EIS's Motion to Compel Arbitration (ECF No. 48) is **GRANTED.**

**I.    BACKGROUND**

For the purposes of these motions to dismiss, the Court accepts the factual allegations in

the Complaint as true and draws all inferences in the light most favorable to Smith-Bishop. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court may also consider any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

This action involves a credit dispute pertaining to Smith-Bishop's repeated complaints to EIS and the City via the New York City Human Resources Administration ("NYCHRA") for alleged improper credit reporting and investigative failings in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"). (*See generally* ECF No. 23.) He alleges the Defendants provided false information on his consumer report, specifically inaccuracies pertaining to his credit file as related to collection marks on child support accounts. (*Id.*) As a result, Smith-Bishop alleges he sent eight dispute letters to EIS, arguing "any notion that he owed money in relation to his accounts with NYCHRA was inaccurate." (*Id.* ¶¶ 53–54, 61–62, 69–70, 77–78, 86–87, 95–96, 104–105, 113–114.) He further claims EIS "failed to adequately review all of the information provided to it by" him, it "failed to conduct a reasonable reinvestigation," and it "failed to correct or delete the collection marks appearing in [Smith-Bishop's] credit file." (*Id.* ¶¶ 57–59, 64–67, 73–75, 82–84, 91–93, 100–102, 109–111, 118–120.) In terms of NYCHRA, he states it received automated credit dispute verifications ("ACDVs") related to each of the eight disputes, but it "failed to review all relevant information provided by [EIS] regarding [Smith-Bishop's] disputes," it "verified the disputed information as accurate to [EIS]," and "it continued to furnish data to [EIS] inaccurately suggesting that [Smith-Bishop] had collection marks on his child support accounts to NYCHRA." (*Id.* ¶¶ 134–35, 137.)

2

On January 24, 2024, Smith-Bishop filed his original Complaint. (ECF No. 1.) He filed an Amended Complaint on May 20, 2024. (ECF No. 23.) The Amended Complaint alleges the following causes of action: (1) Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy in violation of 15 U.S.C. § 1681e(b) against EIS (Count I); (2) Failure to Perform a Reasonable Reinvestigation in violation of 15 U.S.C. § 1681i against EIS (Count II); and (3) Failure to Conduct an Investigation of the Disputed Information and Review all Relevant Information Provided by the Consumer in violation of 15 U.S.C. § 1681s-2(b) against the City (Count III). (*Id.* at 23–27.)

On July 26, 2024, the City filed its Motion to Dismiss for Lack of Jurisdiction pursuant to Rule 12(b)(2), or, in the alternative, 12(b)(6). (ECF No. 39.) Smith-Bishop filed his Opposition to the Motion to Dismiss on August 5, 2024 (ECF No. 40), and the City filed its Reply on August 12, 2024 (ECF No. 41). On November 26, 2024, EIS filed its Motion to Compel Arbitration. (ECF No. 48.) On December 10, 2024, Smith-Bishop filed his Opposition to the Motion to Compel (ECF No. 49), and EIS filed its Reply on December 13, 2024 (ECF No. 51).

## II.   LEGAL STANDARD

### A.   Personal Jurisdiction

A plaintiff bears "the burden of demonstrating facts that establish[] personal jurisdiction." *Fatouros v. Lambrakis*, 627 F. App'x 84, 86-87 (3d Cir. 2015) (citing *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009)). "In reviewing a motion to dismiss for lack of personal jurisdiction, a court 'must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff.'" *Smith v. Zimmer US, Inc.*, Civ. A. No. 19-06863, 2020 WL 487029, at *1 (D.N.J. Jan. 29, 2020) (quoting *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992)). "But when a defendant raises a jurisdictional defense, 'a plaintiff

bears the burden of proving by affidavits or other competent evidence that jurisdiction is proper.'" *Id.* (quoting *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996)). In determining whether it has personal jurisdiction, the Court is not bound by the pleadings, *see id.*, and, to the extent they are material, will include relevant allegations pertaining to jurisdiction in its summary of the facts, while construing all disputed facts in favor of the plaintiff. *Carteret Sav. Bank*, 954 F.2d at 142 n.1.

Pursuant to Federal Rule of Civil Procedure 4(k), a federal district court may exercise personal jurisdiction over a non-resident defendant to the extent permitted by the law of the state in which it sits. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007). New Jersey's long-arm statute permits the exercise of personal jurisdiction over non-resident defendants to the fullest extent as allowed under the Fourteenth Amendment of the United States Constitution. N.J. Ct. R. 4:4-4; *Eaton Corp. v. Maslym Holding Co.*, 929 F. Supp. 792, 796 (D.N.J. 1996). In other words, this Court's jurisdiction is "constrained, under New Jersey's long-arm rule, only by the 'traditional notions of fair play and substantial justice,' inhering in the Due Process Clause of the Constitution." *Carteret Sav. Bank*, 954 F.2d at 145 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "Thus, parties who have constitutionally sufficient 'minimum contacts' with New Jersey are subject to suit there." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (citing *Carteret Sav. Bank*, 954 F.2d at 149).

The Supreme Court has defined two categories of personal jurisdiction: general jurisdiction and specific jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). General jurisdiction requires continuous and systematic contacts and exists in "situations where a foreign corporation's 'continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities.'" *Id.*

4

(alteration in original) (quoting *Int'l Shoe Co.*, 326 U.S. at 318). "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliation with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Id.* (quoting *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011)); *see also Int'l Shoe Co.*, 326 U.S. at 317. While the Supreme Court has not ruled out the possibility an individual could be subject to general jurisdiction because of "continuous and systematic contacts" with the forum, the Court has applied general jurisdiction only to corporate defendants. *Goodyear Dunlop Tires Ops.*, 564 U.S. at 924 ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; *for a corporation*, it is an equivalent place, *one in which the corporation is fairly regarded as at home*." (emphasis added)). "It may be that whatever special rule exists permitting 'continuous and systematic' contacts . . . to support jurisdiction with respect to matters unrelated to activity in the forum applies only to corporations." *Burnham v. Super. Ct. of Cal.*, 495 U.S. 604, 610 n.1 (1990) (citations omitted).

Specific jurisdiction, however, may be established over a defendant who "has 'purposefully directed' his activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985) (citations omitted). More specifically, specific jurisdiction requires: "(1) the defendant purposefully directed its activities at the residents of the forum, (2) the claim arises out of or relates to those activities, and (3) the assertion of personal jurisdiction is reasonable and fair." *WAG Acquisition, LLC v. Multi-Media, LLC*, Civ. A. No. 14-01661, 2015 WL 5310203, at *12 (D.N.J. Sept. 10, 2015) (citation omitted); *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 780 (3d Cir.

2018) (stating "what is necessary [for specific jurisdiction] is a deliberate targeting of the forum" (citation omitted)).

A court's exercise of personal jurisdiction "requires some act by which the defendant 'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). Additionally, due process requires that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (quoting *Int'l Shoe Co.*, 326 U.S. at 316); *see also O'Connor*, 496 F.3d at 316–23 (discussing the three-step process to determine personal jurisdiction). Importantly, "the defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). "[T]he state of a plaintiff's residence does not on its own create jurisdiction over nonresident defendants." *Marten v. Godwin*, 499 F.3d 290, 298 (3d Cir. 2007). Rather, "[j]urisdiction is proper when the state of a plaintiff's residence is 'the focus of the activities of the defendant out of which the suit arises.'" *Id.* (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780 (1984)).

Moreover, "the minimum contacts inquiry must focus on 'the relationship among the defendant, the forum, and the litigation.'" *Lebel v. Everglades Marina, Inc.*, 558 A.2d 1252, 1255 (N.J. 1989) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). "The 'minimum contacts' requirement is satisfied so long as the contacts resulted from the defendant's purposeful conduct and not the unilateral activities of the plaintiff." *Id*. (quoting *World-Wide Volkswagen*, 444 U.S. at 297–98). Indeed, the three-part inquiry is meant to ensure that an out-of-state defendant will not

6

be haled into court based on "random, fortuitous, or attenuated contacts, or the unilateral activity of another party or a third person[.]" *Croat v. Mission Fine Wines, Inc.*, Civ. A. No. 19-17786, 2020 WL 1921955, at *4 (D.N.J. Apr. 21, 2020) (quoting *Stevens v. Welch*, Civ. A. No. 10-03928, 2011 WL 541808, at *3 (D.N.J. Feb. 7, 2011)). The plaintiff "bears the burden of demonstrating [that] contacts with the forum state [are] sufficient to give the court *in personam* jurisdiction." *Mesalic v. Fiberfloat Corp.*, 897 F.2d 696, 699 (3d Cir. 1990) (alterations in original) (quoting *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 63 (3d Cir. 1984)).

### B. Compelling Arbitration

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, "establishes a policy in favor of arbitration that requires the liberal reading of arbitration agreements and the resolution of any doubts in favor of arbitration." *S. Broward Hosp. Dist. v. Medquist, Inc.*, 258 F. App'x 466, 467 (3d Cir. 2007) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, (1983)). The FAA provides: "[a] written provision . . . to settle by arbitration a controversy . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract[.]" 9 U.S.C. § 2. "Decades ago, the Supreme Court discussed 9 U.S.C. § 2 as 'a congressional declaration of a liberal federal policy favoring arbitration agreements.'" *White v. Samsung Elecs. Am., Inc.*, 61 F.4th 334, 338 (3d Cir. 2023) (quoting *Moses*, 460 U.S. at 24). More recently, though, the Supreme Court explained that "the FAA's 'policy favoring arbitration' does not authorize federal courts to invent special, arbitration-preferring procedural rules." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022) (quoting *Moses*, 460 U.S. at 24). Rather, this policy "is to make 'arbitration agreements as enforceable as other contracts, but not more so.'" *Morgan*, 596 U.S. at 418 (quoting *Prima Paint Corp. v. Flood & Conklin Mfg.*

7

*Co.*, 388 U.S. 395, 404 n.12 (1967)). "Accordingly, a court must hold a party to its arbitration contract just as the court would to any other kind." *Morgan*, 596 U.S. at 418.

"[Q]uestions of arbitrability, including challenges to an arbitration agreement's validity, are presumed to be questions for judicial determination." *Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 773 (3d Cir. 2013) (citation omitted). "In considering a motion to compel arbitration, a court must engage in a two-step analysis: it must determine first whether there is a valid agreement to arbitrate and, if so, whether the specific dispute falls within the scope of said agreement." *Thomas v. Jenny Craig, Inc.*, Civ. A. No. 10-02287, 2010 WL 3076861, at * 3 (D.N.J. Aug. 4, 2010) (first citing *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009), and then citing *Salvadori v. Option One Mortg. Corp.*, 420 F. Supp. 2d 349, 356 (D.N.J. 2006)). "State contract principles apply in ascertaining whether the parties to an action have agreed to arbitrate." *Sarbak v. Citigroup Glob. Mkts., Inc.*, 354 F. Supp. 2d 531, 537 (D.N.J. 2004) (first citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995), and then citing *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002)). "Under New Jersey law, '[a]n agreement to arbitrate, like any other contract, must be the product of mutual assent, as determined under customary principles of contract law.'" *Levy v. AT&T Servs., Inc.*, Civ. A. No. 21-11758, 2022 WL 844440, at *3 (D.N.J. Mar. 22, 2022) (alteration in original) (quoting *James v. Glob. TelLink Corp.*, 852 F.3d 262, 265 (3d Cir. 2017)). "Therefore, 'if parties agree on essential terms and manifest an intention to be bound by those terms, they have created an enforceable contract.'" *Id.* (quoting *Crawford v. Compass Grp. USA*, Civ. A. No. 14-02545, 2015 WL 1006389, at *3 (D.N.J. Mar. 6, 2015)). "To manifest assent, 'an offeree must provide "unqualified acceptance," which can be express or implied by conduct.'" *Id.* (quoting *Glob. TelLink Corp*, 852 F.3d at 265). For example, where employees are properly notified of an arbitration agreement and where they

8

would assent through inaction unless they filled out an opt-out form, "failure to opt out of the arbitration through inaction [is] a proper method to assent." *Id.* at *4 (collecting cases).

"In examining whether certain claims fall within the ambit of an arbitration clause, a court must 'focus . . . on the "factual allegations in the complaint rather than the legal causes of action asserted."'" *Jayasundera v. Macy's Logistics & Operations, Dep't of Human Res.*, Civ. A. No. 14-07455, 2015 WL 4623508, at *2 (D.N.J. Aug. 3, 2015) (alteration in original) (quoting *Mut. Benefit Life Ins. Co. v. Zimmerman*, 783 F. Supp. 853, 869 (D.N.J. 1992), *aff'd*, 970 F.2d 899 (3d Cir. 1992)). If the court determines that the claims in dispute fall within the scope of the arbitration agreement, the court "must then refer the dispute to arbitration without considering the merits of the case." *Id.*

"Where arbitrability is apparent on the face of the complaint, a Rule 12(b)(6) standard of review should be applied to the motion to compel arbitration." *Sauberman v. Avis Rent a Car Sys., L.L.C.*, Civ. A. No. 17-00756, 2017 WL 2312359, at *2 (D.N.J. May 26, 2017) (citing *Guidotti*, 716 F.3d at 774).

### III. Decision

#### A. The City's Motion to Dismiss Smith-Bishop's Complaint

The City argues Smith-Bishop failed to sufficiently allege facts that would allow this Court to exercise personal jurisdiction over it. (ECF No. 39 at 6.) The City further argues NYCHRA "did not purposefully direct activities at New Jersey specific to this action," nor does it "generally direct *any* activities towards New Jersey." (*Id.*) It also emphasizes "the fact that [Smith-Bishop's] Amended Complaint is devoid of allegations relating to any NYCHRA correspondence with [Smith-Bishop], rendering this argument inappropriate for the Court's consideration of this Motion." (*Id.* at 12–13.) Even if NYCHRA had sent correspondence to Smith-Bishop at his New Jersey address, the City argues this would have been done in the ordinary course of business only.

9

(*Id.*) As a result, the City claims this Court does not have general or specific personal jurisdiction over it. (*Id.* at 6.) The City alternatively argues Smith-Bishop "has failed to allege a cognizable claim against NYCHRA under either the FCRA or governing caselaw." (*Id.* at 15.) Specifically, it claims Smith-Bishop failed "to plead facts detailing how an investigation of a disputed credit report was unreasonable (or did not occur)," as the Amended Complaint "contains no allegations or information regarding NYCHRA's investigation," and that his allegations are done in a purely conclusory fashion regarding "[EIS] purportedly generat[ing] dispute notifications and sen[ding] them to NYCHRA." (*Id.* 15–16.)

Smith-Bishop responds that the City, via NYCHRA, committed an intentional tort aimed at a resident of New Jersey, which is sufficient to find minimum contacts and provides this Court with specific jurisdiction. (ECF No. 40 at 6.) He states violations of FCRA are akin to an intentional tort and, under the effects test, personal jurisdiction exists, since "the brunt of this tortious conduct [was] in New Jersey, where he resides." (*Id.* at 6–7.) Beyond stating in the Opposition that NYCHRA's actions were expressly aimed at New Jersey, Smith-Bishop also claims he has adequately plead a § 1681s-2(b) claim. (*Id.* at 9.) Specifically, he argues a *prima facie* case under § 1681s-2(b) has been made, and whether a reasonable investigation was conducted is an inappropriate question to resolve on a motion to dismiss. (*Id.* at 9–10.)

In reply, the City argues Smith-Bishop "offers only threadbare legal and factual arguments and contends that this Court possesses specific personal jurisdiction over the city." (ECF No. 41 at 5.) Further, the City asserts that, "[e]ven accepting [Smith-Bishop's] central premise that alleged FCRA violations (like those in the Amended Complaint here) must be analyzed as intentional torts for jurisdictional purposes, [Smith-Bishop] offers no credible facts supporting his contention that the City directed any tortious conduct towards this forum." (*Id.*) The City contends Smith-Bishop

10

does not point to a single binding authority where a court found personal jurisdiction over a FCRA claim under a similar factual situation because none exists. (*Id.* at 6.) Likewise, the City emphasizes the Amended Complaint contains no allegations of targeted activity, and the "attempt [to] demonstrate that NYCHRA was 'aware' of his residence in New Jersey [by] pointing to a single instance of NYCHRA correspondence" to him introduces evidence that not only fails to provide for personal jurisdiction, but also cannot be considered because the referenced letter was not part of the Amended Complaint. (*Id.* at 8.)

Smith-Bishop has failed to establish this Court has personal jurisdiction over the City. Principally, a "prima facie case for the exercise of personal jurisdiction" over the City is required as Smith-Bishop must establish "with reasonable particularity sufficient contacts between the defendant and the forum state." *Display Works, LLC v. Bartley*, 182 F. Supp. 3d 166, 172 (D.N.J. 2016). General jurisdiction "typically arises only when a corporation's 'affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State.'" *Malik v. Cabot Oil & Gas Corp.*, 710 F. App'x 561, 563 (3d Cir. 2017) (citing *Daimler*, 571 U.S. at 127). "With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'" *Daimler*, 571 U.S. at 137 (citation omitted). There is clearly no basis here for general jurisdiction over NYCHRA and the City given their location of New York nor has it been argued by Smith-Bishop. *See Gonzalez v. City of Norwich Connecticut*, 646 F. App'x 288, 290 (3d Cir. 2016) ("Here, there is no question, substantial or otherwise, that the City is not 'essentially at home' in the District of Jersey."). In terms of specific jurisdiction, Smith-Bishop has not shown the City "'purposefully directed' [its] activities at residents of the forum" and that his claims "'arise out of or relate to' those activities." *Burger King*, 471 U.S. at 474; *Metcalfe*, 566 F.3d at 334. In other words, Smith-Bishop "has failed to establish the requisite

11

'purposeful availment' necessary for a finding of specific jurisdiction." *Croat v. Mission Fine Wines, Inc.*, 2020 WL 1921955, at *4.

The City's citation to *Brainbuilders LLC v. EmblemHealth, Inc.*, Civ. A. No. 20-12703, 2021 WL 2025004 (D.N.J. May 21, 2021) is instructive. The plaintiff there alleged the City "should have been aware that the [patient's mother] was a New Jersey resident because . . . 'almost half of Defendant's teachers in the Bronx . . . reside outside the five boroughs of the City,'" as well as "given New York City's proximity to New Jersey, 'it is safe to assume that a large percentage of those teachers reside in New Jersey.'" *Brainbuilders LLC*, 2021 WL 2025004 at *5. The plaintiff also argued contracts signed between the City and its New Jersey-resident teachers were additional evidence of its knowledge it could be brought into New Jersey courts. *Id.* That court held that, while the City "was likely aware that the Mother resided in New Jersey at the time it hired her that, alone, is insufficient to give rise to specific personal jurisdiction." *Id.* Likewise, the court found the "[p]laintiff has not identified any specific contacts New York [d]efendants had with [p]laintiff in New Jersey[.]" *Id.* at *6. The same rationale applies here: even though the City was aware of Smith-Bishop's New Jersey residence, that fact alone does not give rise to specific personal jurisdiction, and he has not otherwise identified sufficient contacts between him and the City in New Jersey.

Smith-Bishop argues his FCRA claim should be analyzed as an intentional tort under the "effects test" from *Calder v. Jones*, 465 U.S. 783 (1984), and that it proves specific jurisdiction is warranted in this case. The *Calder* test requires Smith-Bishop to demonstrate that

> (1) [t]he [City] committed an intentional tort; (2) [Smith-Bishop] felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by [him] as a result of that tort; and (3) [t]he [City] expressly aimed [its] tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.

12

*Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007). In other words, he must establish that the City "knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum." *Id.* (citing *IMO Indus. v. Kiekert AG*, 155 F.3d 254, 266 (3d Cir. 1998)). As evidence under the test, Smith-Bishop characterizes the City's actions as "communicating false information claiming that [he] was a credit delinquent, i.e., that he was past-due on child support payments." (ECF No. 40 at 7.) As such, he claims, the City "committed an intentional tort against a consumer that it knew to be a New Jersey resident and whom it knew would feel the brunt of its tortious conduct while in New Jersey." (*Id.*)

However, as the City has pointed out, Smith-Bishop has not alleged that it took any direct actions targeting New Jersey as the forum state in his Amended Complaint. Therefore, this leaves the only potential to rely upon for the *Calder* test as stemming from his Opposition where he states that NYCHRA knew his address due to the alleged ACDVs and because of that the City was aware of the tortious effects that would be felt in New Jersey. However, this Court is not allowed to consider such information since it was alleged for the first time in opposition. (*Id.* at 8.) *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). Likewise, the "state of a plaintiff's residence does not, without more, create jurisdiction over nonresident defendants," *Marten*, 499 F.3d at 297 (citing *IMO Indus.*, 155 F.3d at 266). Instead, a complaint must allege "specific facts showing a deliberate targeting of the forum." *LasSala v. Marfin Popular Bank Public Co., Ltd.*, 410 Fed. App'x 474, 477 (3d Cir. 2011).

*Weinstein v. Pullar*, Civ. A. No. 13-4502, 2013 WL 6734317 (D.N.J. Dec. 19, 2013), is a similar case where the plaintiff alleged the Georgia defendant had violated FCRA by sending him correspondence "calculated to cause injury to residents of New Jersey" and therefore supported

13

personal jurisdiction via the effects test. *Weinstein*, 2013 WL 6734317 at *2. Applying the *Calder* effects test, that court determined the plaintiff there had to demonstrate the defendant "'manifest[ed] behavior intentionally targeted at and focused on' [New Jersey] for *Calder* to be satisfied." *Id.* at *5 (citing *IMO Indust.,* 155 F.3d at 265 (quoting *ESAB Grp. v. Centricut, Inc.,* 126 F.3d 617, 625 (4th Cir. 1997))). That court referenced the Third Circuit's interpretation of the test as "prevent[ing] a defendant from being haled into a jurisdiction solely because the defendant intentionally caused harm that [the plaintiff] felt in the forum state[.]" *Id.* (citing *Marten,* 499 F.3d at 297). The court went on to state, "[t]he mere allegation that the plaintiff 'experience[s] the injury' caused by defendant's allegedly tortious conduct does not, without more, show that defendant 'expressly aimed' its conduct at New Jersey." *Id.* (citing *IMO Indus.,* 155 F.3d at 265 n. 8 (citation omitted)). Relying on *Marten*, the court ultimately dismissed the case for lack of personal jurisdiction, finding that just like the situation here, that plaintiff had "proffer[ed] no set of specific jurisdictional facts," which establish a direct targeting of the forum. *Id.* at *6. Indeed, that court held there were "minimal allegations concerning Defendants' FCRA violations and the purported effects of those violations." *Id.* Smith-Bishop's allegations are similarly minimal here.

Smith-Bishop cites to *Grand Entertainment Group v. Star Media Sales*, 988 F.2d 476, 483 (3d Cir. 1993) in stating, "[w]here the contacts evaluated are those that give rise to the litigation, even one contact with the forum may be enough to justify jurisdiction as long as the other criteria are met," as well as to *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999), to argue "[w]hen the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment." (ECF No. 40 at 8.) However, as already explained, such conclusions have no supported basis in the Amended Complaint. Further, Smith-Bishop's reliance on *Wein Air* is misplaced, as that case is not analogous to his lawsuit. In *Wein*

14

*Air*, the Fifth Circuit determined the defendant had sufficient minimum contacts and had personally availed itself of the forum because the defendant "performed several tortious actions outside of Texas directed towards Wien Air in Texas" where "these actions had foreseeable effects in the forum and were directed at the forum." 195 F.3d at 212. Part of this determination was because of a two-year business relationship that included meetings in the forum state as well as correspondence and communications addressed to the forum state. *Id.* at 212–16. In contrast, Smith-Bishop does not allege actions that could even come close to the targeting described in *Wien Air* in order to sustain a finding of personal jurisdiction.

Accordingly, the City's Motion to Dismiss for lack of personal jurisdiction is **GRANTED**. There is no need for this Court to rule on the alternative Motion to Dismiss for failure to state a claim as it is moot given the dismissal on jurisdictional grounds.

### B.  EIS's Motion to Compel Arbitration

EIS argues Smith-Bishop is subject to an arbitration agreement with its affiliate, ConsumerInfo.com, and asks the Court to enforce that agreement, pursuant to the FAA. (ECF No. 48-1 at 4.) EIS asserts Smith-Bishop has a membership in CreditWorks, EIS's credit monitoring service provided by its affiliate ConsumerInfo.com. (*Id.* at 4.) It states enrolling in CreditWorks requires agreeing to a Terms of Use Agreement that contains an arbitration agreement (the "CreditWorks Agreement"). (*Id.*) EIS claims Smith-Bishop thus agreed to "arbitrate 'all disputes and claims' that arise out of or relate to his CreditWorks Agreement." (*Id.* (internal citations omitted).) Importantly, EIS contends not only that it may directly enforce the arbitration provision,

15

but also that the agreement explicitly delegated all issues to an arbitrator, "including all questions regarding arbitrability, enforceability and scope." (*Id.* at 5.)

In his Opposition, Smith-Bishop does not dispute that he is a party to an arbitration agreement, nor does he claim the contract is invalid or that EIS is not a proper party able to enforce arbitration. (ECF No. 49 at 2.) Instead, he argues EIS has "waived any right it may have held to arbitrate by deliberately electing to fully participate in the immediate litigation, rather than seeking to compel arbitration on an alleged agreement, the existence of which was known to [EIS] even before Plaintiff filed suit." (*Id.*) Smith-Bishop claims that, despite EIS raising arbitration as an affirmative defense in both of its filed Answers, EIS has "moved forward for the better part of a year without otherwise mentioning arbitration or indicating any intent whatsoever to have this matter adjudicated by an arbitrator." (*Id.* at 7.) Specifically, Smith-Bishop argues EIS, after waiting ten months following notice of this suit to file this motion and having filed its Answers,

> fully engaged the federal discovery process, twice agreeing to discovery deadlines, twice submitting those deadlines for the Court's review and approval, negotiating and submitting an agreed protective order governing discovery for the Court's review and approval, and issuing and responding to written discovery with extensive responses (including producing nearly 3,000 pages of documents for Plaintiff and/or his counsel to review).

(*Id.* at 9–10.) As support, he cites to *Morgan v. Sundance, Inc.*, 596 U.S. 411, 419 (2022), and both subsequent and previous case law in arguing EIS has waived its right to compel arbitration. (*Id.* at 7–8.) While the Third Circuit has yet to set out a formal test to discern whether a party has "acted inconsistently with an intent to assert its right to arbitrate," Smith-Bishop claims the Court is supposed to "focus[] on the actions of the p[arty] who held the right" and "weigh[] the circumstances and context of each case." (*Id.* at 8–9) (quoting *White*, 61 F.4th at 339 (quoting *Morgan*, 596 U.S. at 417; *Gray Holdco Inc. v. Cassady*, 654 F.3d 444, 451 (3d Cir. 2011)). He ends by arguing that when "[a]pplying the general rule for waiver as *Morgan* directs, waiver occurs

16

where a party has 'intentional[ly] relinquish[ed] or abandon[ed] . . . a known right'"(*id.* at 8 (quoting White, 61 F.4th at 339 (quoting *Morgan*, 596 U.S. at 417))), and that determining whether waiver occurred requires inquiring "whether the moving party knew of an existing right to arbitration and "acted inconsistently with an intent to assert its right to arbitrate" (*id.* (quoting *Hejamadi v. Midland Funding, LLC*, Civ. A. No. 18-13203, 2024 WL 3159316, at *3 (D.N.J. June 25, 2024) (quoting *White*, 61 F.4th at 339–40))).

In its Reply, EIS argues Smith-Bishop's focus on whether it waived its right to compel arbitration is irrelevant because the CreditWorks Agreement delegates all issues to an arbitrator, meaning the arbitrator must decide the issue of waiver, not this Court. (ECF No. 50 at 2–4.) EIS goes on to claim that, even if this Court had the authority to rule on the alleged waiver, no such waiver occurred, as EIS has not evinced an intent to litigate instead of arbitrating. (*Id.* at 4–8). While EIS admits it responded to Smith-Bishop's initial written discovery requests, it "has not noticed or taken a single deposition; besides the instant motion, EIS has not filed a single motion; nor has EIS sought a single ruling from this Court on the merits of Plaintiff's claims." (*Id.* at 6.) Correspondingly, EIS claims "there was no intentional relinquishment of arbitration rights." (*Id.*)

"The parties to such a contract may agree to have an arbitrator decide not only the merits of a particular dispute, but also 'gateway questions of 'arbitrability' . . . . Therefore, when the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract." *Henry Schein, Inc. v. Archer and White Sales, Inc.*,586 U.S. 63 (2019) (citing *Rent–A–Center, West, Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010); *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 649–50 (1986). In order for such a delegation to validly prevent judicial review, "the question of arbitrability" must be "clearly and unmistakably provided" by the parties

17

to be an issue sent to the arbitrator. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (citing *First Options*, 514 U.S. at 944; *AT & T Technologies*, 475 U.S. at 649). "In cases where parties have agreed to only one contract, and that contract contains an arbitration clause with a delegation provision, then, absent a successful challenge to the delegation provision, courts must send all arbitrability disputes to arbitration." *Coinbase, Inc. v. Suski*, 602 U.S. 143, 152 (2024). The Third Circuit has decided that "waiver of the right to arbitrate based on litigation conduct remains presumptively an issue for the court to decide in the wake of *Howsam* and *Green Tree*," but "[a]n issue presumptively for the court to decide will [still] be referred to the arbitrator for determination" when "the parties' arbitration agreement contains 'clear and unmistakable evidence' of such an intent." *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 221 (3d Cir. 2007) (internal citations omitted).

   The Terms of Use Agreement provided by EIS states:

> All issues are for the arbitrator to decide including, but not limited to, (i) all issues regarding arbitrability, (ii) the scope and enforceability of this arbitration provision as well as the Agreement's other terms and conditions, (iii) whether you or ECS, through litigation conduct or otherwise, waived the right to arbitrate, (iv) whether all or any part of this arbitration provision or Agreement is unenforceable, void or voidable including, but not limited to, on grounds of unconscionability, (v) any dispute regarding the payment of arbitration-related fees, (vi) any dispute related to the dispute Notice provisions in subparagraph (b) (above), and (vii) any dispute related to Mass Arbitration (defined below). Pursuant to this agreement, the arbitrator has been delegated with, and possesses, exclusive authority to resolve all of the above-enumerated types of disputes.

(ECF No. 48-6 at 9–10). Such unequivocal language expressly delegating arbitrability issues to the arbitrator makes clear to this Court that any presumption of judicial review over waiver by

litigation conduct has been rebutted.[1] This language is distinct from what the Third Circuit in *Ehleiter* determined required a judge's review, as there it held "[t]here [were] no references to waiver of arbitration in this or any other provision of the Agreement," which meant the question of waiver based on litigation conduct had to be decided by a court. *Ehleiter*, 482 F.3d at 222. Here, there exists no ambiguity in the phrase "[a]ll issues are for the arbitrator to decide, including . . . *whether you or ECS, through litigation conduct or otherwise, waived the right to arbitrate*[.]" (ECF No. 48-6 at 9–10 (emphasis added)). *See Acorin v. Experian Info. Sols.*, Inc., 2024 WL

---

[1] Even if this presumption had not been overcome, EIS has not waived its right to compel arbitration. Third Circuit law provides that waiver typically occurs when a party has sought a judicial determination of the merits of arbitrable issues, *i.e.*, the party has made a dispositive motion. *See White*, 61 F.4th at 340 ("Although motions to dismiss will not always evince an intent to litigate instead of arbitrate, Samsung clearly sought to have this case dismissed by a court on the merits."); *Taylor v. CDS Advantage Sols*, Civ. A. No. 22-02803, 2024 WL 1048124, *9–*10 (D. N.J. Mar. 9, 2024), *reconsideration denied*, Civ. A. No. 22-02803, 2024 WL 1635686 (D.N.J. Apr. 16, 2024) ("While the Court acknowledges CDS first filed an Answer as its responsive pleading and subsequently filed its initial motion to compel arbitration a few months later, CDS asserted binding arbitration in one of its defenses in its Answer . . . CDS has not engaged in any conduct that the Court finds constitutes waiver of its right to compel arbitration."); *Smith v. Experian Info. Sols., Inc.*, Civ. A. No. 22-06471, 2023 WL 6057377, at *4–*5 (D.N.J. Sept. 14, 2023) (finding defendant did not waive nor intentionally relinquish its right to arbitrate even though "[d]efendant filed an answer, attended two conferences, and engaged in the early stages of pre-trial discovery[,]" noting these were "all early-stage activities that took place within four months of [p]laintiff initiating the action" and "[i]mportantly, [d]efendant ha[d] not engaged in any other motions practice"); *Hejamadi*, 2024 WL 3159316 at *5 (rejecting the claim of waiver because the defendant "had not, for example, only sought arbitration after a failed motion to dismiss on other grounds" nor had defendant's actions "evince[d] a preference for litigation over arbitration" (quoting *White*, 61 F.4th at 340)); *see also Anderson v. Experian Info. Sols., Inc.*, 2024 WL 3076388, at *4–5 (N.D. Cal. June 18, 2024) (holding no waiver of right to compel arbitration because EIS had not made a substantive motion and EIS "has never waffled on its right to arbitration; rather, it pled it as an affirmative defense in its answer."); *Fox v. Experian Info. Sols., Inc.*, 718 F. Supp. 3d 1231, 1239 (E.D. Cal. Feb. 23, 2024) ("In this case, defendant moved to compel arbitration within a year of the filing of plaintiff's complaint, and its motion to compel arbitration is the first substantive motion filed in this action . . . Accordingly, the court finds that defendant's delay is insufficient to establish waiver."); *Capps v. Experian Info. Sols., Inc.*, Civ. A. No. 22-00806, 2023 WL 3030990, at *7 (E.D. Cal. Apr. 21, 2023) (finding no waiver because "in the nine-and one-half months since plaintiffs initiated this action, defendant [EIS] has not sought nor obtained any ruling from the court on the merits of the action").

5011950 (S.D. Cal. Dec. 6, 2024). Likewise, Smith-Bishop has not challenged the enforceability of the delegation clause. *See Henry Schein*, 586 U.S. at 67–71; *Rent-A-Center*, 561 U.S. at 68–69 (2010) ("[U]nless [plaintiff] challenged the delegation provision specifically, we must treat it as valid under § 2, and must enforce it under §§ 3 and 4 [of the FAA]."). As such, all issues of arbitrability must be decided by an arbitrator, and there are no threshold questions for this Court to decide.

Accordingly, EIS's Motion to Compel Arbitration is **GRANTED**.

## IV.   CONCLUSION

For the reasons set forth above, the City's Motion to Dismiss (ECF No. 39) is **GRANTED**, EIS's Motion to Compel Arbitration (ECF No. 48) is **GRANTED**, and Smith-Bishop's Amended Complaint (ECF No. 23) is **DISMISSED WITHOUT PREJUDICE**.[2] An appropriate Order follows.

*/s/ Brian R. Martinotti*  
**HON. BRIAN R. MARTINOTTI**  
**UNITED STATES DISTRICT JUDGE**

Dated:  February 27, 2025

---

[2] The Court dismisses rather than stays this action pending arbitration because neither party requested the action be stayed pending arbitration. *See, e.g.*, *Somerset Consulting, LLC v. United Cap. Lenders, LLC*, 832 F. Supp. 2d 474, 490 (E.D. Pa. 2011) (dismissing plaintiffs' amended complaint and closing case after granting defendants' motion to compel arbitration, reasoning that while the Third Circuit "has noted that 'the plain language of [FAA] § 3 affords a district court no discretion to dismiss a case where one of the parties applies for a stay pending arbitration,'" neither party in this case requested the action be stayed pending arbitration (first alteration in original) (quoting *Lloyd v. Hovensa, LLC*, 369 F.3d 263, 269 (3d Cir. 2004))).